**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | |
|---|---|
| **SONYA SEXTON, as Administratrix of the Estate of CLINT E. SEXTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** <u>5:21-cv-00556</u> |
| ) | |
| **The UNITES STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**COMPLAINT**

**COMES NOW**, Sonya Sexton, as Administratrix of the Estate of Clint E. Sexton (hereinafter "Plaintiff"), by counsel, and for her Complaint states and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action against Defendant the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq*., for the wrongful death of Clint E. Sexton following an incident on August 15, 2018 while he was under the custody and control of the Federal Bureau of Prisons at the Federal Correctional Institution at Beckley (hereinafter "FCI Beckley") in Raleigh County, West Virginia.

2.      Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

3.      On August 1, 2019, Plaintiff, through the undersigned counsel, filed her Notice of Claim with Defendant the Federal Bureau of Prisons (hereinafter, the "FBOP"), which included a completed Standard Form 95.  *See* Memorandum Order and Opinion, attached hereto as <u>Exhibit 1</u>.

4.      By letter dated August 14, 2019, the FBOP rejected Plaintiff's Notice of Claim on the grounds that sufficient proof that counsel was authorized to act on Plaintiff's behalf was lacking. *See id*.

5.      Plaintiff later sent letters on October 17, 2019 and May 21, 2020 to the FBOP with copies of counsel's contract of employment with Plaintiff (as proof of authority to represent her), but the FBOP claims the letters were never received. *See id*.

6.      Receiving no response to her May 21, 2020 letter, Plaintiff filed suit against the FBOP on July 23, 2020. *See id*.

7.      On March 29, 2021, Plaintiff's original suit was dismissed without prejudice by this Court on the grounds that because the FBOP allegedly never received the two proof of representation letters from Plaintiff, her Notice of Claim was never formally accepted by the FBOP and, thus, Plaintiff's administrative remedies were not exhausted before filing suit. *See id*.

8.      Following dismissal of Plaintiff's original suit, she sent a letter via certified mail to Michael Frazier, Regional Counsel for the FBOP on April 8, 2021. *See* April 8, 2021 Certified Letter, attached hereto as Exhibit 2.

9.      In Plaintiff's April 8, 2021 Certified Letter, she again enclosed a contract of employment with the undersigned as proof of authority to represent her, as well as a copy of her original Notice of Claim. *See id*.

10.     In her April 8, 2021 Certified Letter, Plaintiff specifically stated, "[i]f this is insufficient to establish my authority to represent [Plaintiff] in this claim, please alert me ASAP." *See id*.

11.     On April 12, 2021, Plaintiff's April 8, 2021 Certified Letter was received by the FBOP. *See* Certified Mail Return Receipt, attached hereto as Exhibit 3.

12.     As of October 12, 2021, Plaintiff has received no response to her April 8, 2021 Certified Letter to the FBOP. *See id.*

13.     Since the FBOP has failed to make a final disposition of Plaintiff's Notice of Claim within six (6) months of receiving all of the material necessary to do so, Plaintiff's Notice of Claim should be deemed constructively denied and Plaintiff's administrative remedies exhausted. *See* 28 U.S.C. § 2675(a); *see GAF v. U.S.*, 818 F.2d 901, 918 (U.S. App. D.C. 1987) ("failure of an agency to make final disposition of a claim within six months of filing entitles the claimant any time thereafter to treat the claim as denied and file suit"); *see also Liburd v. Platzer*, 1990 U.S. Dist. LEXIS 18318. *10-12 (D. V.I. 1990).

14.     Plaintiff now files her Complaint six (6) months after her April 8, 2021 Certified Letter and Notice of Claim were received by the FBOP on April 12, 2021.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1), in that this action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq*.

16.     Venue is proper because the incident giving rise to this Complaint occurred in the Southern District of West Virginia, Beckley Division.

## PARTIES

17.     Plaintiff Sonya Sexton was at all times relevant hereto a resident of Franklin County, Ohio.

18.     Plaintiff was appointed the administrator of the Estate of Clint E. Sexton on January 4, 2019 in the probate court of Franklin County, Ohio.

19.     The Federal Bureau of Prisons is a federal agency under the purview of United States Department of Justice, which is a division of the United States of America. Even though

the FBOP, through its agents and employees acting within the scope of their employment, is the party responsible for the death of Clint E. Sexton, the United States of America is the proper Defendant in this action pursuant to 28 U.S.C. § 2679(d)(2).

20. The FBOP is responsible for the care, custody, and control of inmates in federal prisons.

21. According to the FBOP, its mission is "to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens."

22. According the FBOP, its core values are: "Correctional Excellence – We are correctional workers first, committed to the highest level of performance.  Respect – We embrace diversity and recognize the value and dignity of staff, inmates and the general public.  Integrity – We demonstrate uncompromising ethical conduct in all our actions."

23. According to the FBOP, it is committed to providing: "(a) a safe environment for both staff and inmates; (b) Secure institutions to confine offenders and protect the public; (c) Those skills building programs we can afford, to offer inmates the opportunity to live crime-free lives; (d) Service and stewardship to the public and a continued tradition of excellence; and (e) Staff who are ethical, professional, well-trained, and diverse."

## FACTS

24. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 23 as though fully set forth herein.

25.     On or around December 20, 2017, Clint E. Sexton (hereinafter "Mr. Sexton") was charged with one felony count of being a felon in possession of a firearm in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(2).

26.     On or around January 25, 2018, Mr. Sexton pled guilty to the charge in the United States District Court for the Southern District of Ohio, Columbus Division.

27.     On or about April 10, 2018, a Presentance Investigative Report was completed and submitted to the sentencing court.

28.     The Presentance Investigative Report indicated that, among other things, Mr. Sexton had a family history of bipolar disorder and schizophrenia; that Mr. Sexton suffered from seizures, with post-seizure symptoms that included anxiety, depression, and hallucinations; that Mr. Sexton was currently not taking any medications to treat his seizures or post-seizure symptoms; that a 2015 MRI noted injuries to Mr. Sexton's brain, which resulted in paranoia, confusion, and memory loss; and that Mr. Sexton received a psychological evaluation on November 28, 2017, that resulted in him being diagnosed with, among other things, adjustment disorder, unpredictable episodes, anticipatory distress, anxiety, worries, fears, unspecified personality disorder, difficulties managing behavior, and impulse control.

29.     In addition, the Presentance Investigative Report noted that Mr. Sexton had "[p]ast thoughts of suicide."

30.     According to the Sentencing Recommendation in the Presentance Investigative Report, "[i]t is recommended that the defendant [Mr. Sexton] receive a... psychiatric evaluation, and any recommended treatment during his term of imprisonment."

31.     According to the Sentencing Recommendation in the Presentance Investigative Report, "[t]he nature and circumstances of the offense and the defendant's loss of memory about

the offense, symptoms of post-ictal psychosis, schizophrenic behavior and paranoia suggest the possibility of an underlying physical and/or psychological problem.  Therefore, a special condition for a psychiatric evaluation, counseling and treatment is recommended."

32.     On or about June 22, 2018, Mr. Sexton was sentenced to two (2) years in federal prison.

33.     Upon information and belief, at his sentencing, Mr. Sexton was ordered to have mental health counseling while incarcerated.

34.     Upon information and belief, on or about August 8, 2018, Mr. Sexton arrived at FCI Beckley.

35.     Upon information and belief, on the morning of August 15, 2018, Mr. Sexton was found dead in his cell at FCI Beckley, having hung himself with a belt.

36.     Upon information and belief, prior to Mr. Sexton's death, a psychiatric evaluation or psychological intake was never performed by the FBOP and/or FCI Beckley.

37.     Upon information and belief, prior to Mr. Sexton's death, he was not provided mental health counseling by the FBOP and/or FCI Beckley.

**NEGLIGENT/WRONGFUL CONDUCT**

38.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39.     At all times relevant hereto, the FBOP, through its agents and employees, owed Mr. Sexton a duty of care.

40.     At all times relevant hereto, the FBOP, through its agents and employees, had a duty exercise ordinary diligence to keep prisoners safe and free from harm, including Mr. Sexton.

41.    At all times relevant hereto, the FBOP, through its agents and employees, had a duty to adequately staff FCI Beckley to ensure, among other things, the exercise of ordinary diligence to keep prisoners safe and free from harm, including Mr. Sexton.

42.    At all times relevant hereto, the FBOP, through its agents and employees, had a duty to properly train and supervise its staff to ensure, among other things, the exercise of ordinary diligence to keep prisoners safe and free from harm, including Mr. Sexton.

43.    As set forth hereinabove, the FBOP, through its agents and employees, breached its duty of care to Mr. Sexton by, among other things:

a) Failing to timely and adequately assess that Mr. Sexton was a suicide risk;

b) Failing to timely refer Mr. Sexton to Psychology Services for a Suicide Risk Assessment;

c) Failing to timely perform a psychiatric evaluation on Mr. Sexton;

d) Failing to timely perform a psychological intake on Mr. Sexton;

e) Failing to timely provide Mr. Sexton with mental health counseling;

f) Failing to adequately monitor and/or supervise Mr. Sexton to prevent him from committing self-harm and/or suicide;

g) Failing to timely put Mr. Sexton on direct, continuous observation once it was reasonably foreseeable that Mr. Sexton was at risk for self-harm and/or suicide;

h) Failing to timely put Mr. Sexton on suicide watch once it was reasonably foreseeable that Mr. Sexton was at risk for self-harm and/or suicide;

i) Failing to remove from Mr. Sexton's cell and/or his person methods or means by which he could commit self-harm and/or suicide;

j) Failing to adequately staff FCI Beckley to ensure the safety of Mr. Sexton;

k) Failing to properly supervise staff at FCI Beckley to ensure the safety of Mr. Sexton; and

l) Failing to properly train staff at FCI Beckley in, among other things, suicide risk detection, suicide risk assessment, and/or suicide prevention.

44. At all times relevant hereto, the FBOP, through its agents and employees, knew or should have known that Mr. Sexton posed a clear and imminent threat of self-harm and was at risk for suicide.

45. At all times relevant hereto, agents and employees of the FBOP at FCI Beckley were acting within the scope of their employment.

46. The conduct of agents and employees of the FBOP at FCI Beckley, as it relates to Mr. Sexton, violated the FBOP policy on Suicide Prevention.

47. As a direct and proximate result of the FBOP's breach of its duties of care, Mr. Sexton suffered severe and painful injuries on August 15, 2018.

48. As a direct and proximate result of the FBOP's breach of its duties of care, Mr. Sexton suffered an untimely death on August 15, 2018.

49. As a direct and proximate result of the FBOP's negligent, reckless, and wrongful actions and omissions, Mr. Sexton suffered conscious pain and suffering and an untimely death on August 15, 2018.

50. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq*. and/or the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

**WHEREFORE**, Plaintiff demands judgment in her favor against Defendant in an amount to be proven at trial, together with post-judgment interest; for all damages recoverable under law;

for her attorneys' fees; for expenses and costs of litigation; and for such other and further relief

this Honorable Court deems just and proper.

 

**SONYA SEXTON, on behalf of the**
**Estate of Clint E. Sexton,**
**By Counsel**

*/s/ Russell A. Williams*
Russell A. Williams
WV State Bar No. 12710
New, Taylor & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
russell@newtaylorlaw.com